**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JESUS CONTRERAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MI TIERRA MERCADO Y CARNICERIA, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-07207-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO SANTA CLARA COUNTY SUPERIOR COURT**<br><br>[Re: ECF 17] |

Before the Court is Plaintiff Jesus Contreras' motion to remand. Mot. to Remand ("Mot."), ECF 17. Pursuant to Civ. L.R. 7-1(b), the Court vacated the hearing for this motion. ECF 35. For the reasons discussed herein, the Court GRANTS Plaintiff's motion to remand this action to Santa Clara Superior Court.

**I.　BACKGROUND**

Plaintiff Jesus Contreras, a California resident, works or worked at Mi Tierra Mercado y Carniceria ("Mi Tierra"), a Mexican deli and grocery store located in San Jose, California. Ex. A to First Am. Notice of Removal ("Compl.") ¶ 1, ECF 9. On June 1, 2015, Contreras claims that he was severely injured making sausage with a Hobart model 4364.[1] *Id.* ¶¶ 3, 6. Plaintiff alleges that Mi Tierra purchased the machine before the date of his injury for the manufacture of chorizo. *Id.* ¶ 3. Plaintiff further alleges that the Hobart model 4346 is an "electrical [and] motorized machine used to make sausage by extruding ground pork through a round die at the end of the machine, forming the pork into the shape of round sausage links to then be placed into sausage casings for sale as chorizo." *Id.*

---

[1] The Hobart model 4364 is manufactured by Hobart Corporation, a member of ITW Food Equipment Group ("ITW"). First. Am. Notice of Removal 1 n.1, ECF 9.

According to the complaint, the Hobart model 4346 is designed and manufactured with a point of operation guard that is intended to make it impossible for the machine to engage while the hopper lid is open, thereby making it impossible for an operator's body parts to be exposed to the point of operation of the machine while it is engaged. *Id.* ¶ 4. Contreras alleges that unbeknownst to him, Mi Tierra knowingly removed, disengaged, tampered with, or otherwise rendered inoperable the machine's safety interlock point of operation guard, thus allowing for his injury. *Id.* ¶ 6.

On November 14, 2016, Contreras filed a complaint in the Santa Clara County Superior Court against Mi Tierra and ITW asserting causes of action for general negligence and product liability under California law. *See generally* Compl. ITW timely removed the action to this Court on December 16, 2016, claiming that Mi Tierra was a "sham defendant," and thus there was complete diversity resulting in federal subject matter jurisdiction. *See generally* Notice of Removal, ECF 1; First Am. Notice of Removal, ECF 9.

On January 13, 2017, Contreras filed the instant motion to remand, arguing that Mi Tierra was a proper defendant, and as such, the Court lacks jurisdiction to hear the action. *See generally* Mot. ITW opposes this motion. *See generally* Opp'n to Mot. to Remand ("Opp'n"), ECF 20. Mi Tierra joins ITW's opposition and requests that the Court dismiss it from this action. ECF 21.

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

Federal courts have limited subject matter jurisdiction, and may only hear cases falling within their jurisdiction. Generally, a defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. The removal statute provides two basic ways in which a state court action may be removed to federal court: (1) the case presents a federal question, or (2) the case is between citizens of different states and the amount in controversy exceeds $75,000. *See id.* §§ 1441(a), (b).

The removal statutes are construed restrictively to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). The Ninth Circuit recognizes a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

(internal quotation marks omitted). Any doubts as to removability should be resolved in favor of remand. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the burden of showing that removal is proper. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). If at any time before final judgment it appears that a district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c).

### A.     Fraudulent Joinder

"A district court may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citation omitted); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

That said, there is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). Defendants must "show that the individuals joined in the action cannot be liable on any theory," *Ritchey*, 139 F.3d at 1318, and that "there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). If factual issues are in dispute, the Court must resolve "all disputed questions of fact . . . in the plaintiff's favor." *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).

### III.     DISCUSSION

ITW relies on 28 U.S.C. §§ 1332 and 1441(b) to justify removal to federal court. First Am. Notice of Removal 3. Plaintiff seeks remand on the basis that there is no complete diversity between the parties as required by § 1332(a)(1)—Contreras is a California resident, Mi Tierra is a California citizen, and ITW is a citizen of Delaware and Illinois. Mot. 3. ITW does not dispute that Mi Tierra is a California citizen, but rather argues that Mi Tierra's citizenship can be ignored

3

for the purposes of the jurisdictional inquiry because it is a "sham defendant." Opp'n 3. Specifically, ITW argues that because the power press exception to the California's workers' compensation exclusivity rule does not apply, Contreras must pursue any and all claims against Mi Tierra pursuant to the workers' compensation system. *Id.* 2.

Under California law, "[w]here an employee is injured in the course and scope of his or her employment, workers' compensation is generally the exclusive remedy of the employee . . . ." *LeFiell Mfg. Co. v. Superior Court*, 228 Cal. App. 4th 883, 891 (2014) (citing and quoting Cal. Lab. Code §§ 3600(a), 3602). There are, however, limited statutory exceptions to the exclusivity rule "that authorize the injured worker to seek to augment the workers' compensation benefits by bringing an action at law against the employer." *Id.* at 892 (internal citations and quotations omitted). If one of those statutory exceptions applies, Plaintiff may pursue a claim against Mi Tierra outside of the workers' compensation system. Contreras contends that the power press exception enumerated in Cal. Labor Code § 4558(b), applies, and thus, Mi Tierra is properly named as a defendant in this lawsuit. *See generally* Mot.; Compl. ¶ 3.

Under § 4558, "[a]n employee . . . may bring an action at law for damages against the employer where the employee's injury . . . is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." Cal. Lab. Code § 4558(b); *Flowmaster, Inc. v. Superior Court*, 16 Cal. App. 4th 1019, 1029 (1993) ("[T]he Legislature has determined that recovery for injuries incurred during the course and scope of employment is limited to workers' compensation benefits, but at the same time has recognized that employees who must use power presses, such as plaintiff, potentially require additional protection and compensation from the employer in a civil action in the event of injury.").

The parties agree that whether Plaintiff can state a claim against Mi Tierra turns on a single question: whether the machine that injured Contreras is a "power press" as defined by § 4558. *See generally* Mot.; Opp'n. Section 4558 defines a "power press" as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." Cal.

4

1   Lab. Code § 4558(1)(4). "This statutory definition embraces four elements. 'The power press
2   itself is a machine. It is a machine that forms materials. The formation of materials is effectuated
3   with a die. Finally, the materials being formed with the die are being formed in the manufacture
4   of other products.'" *McCoy v. Zahniser Graphics, Inc.*, 39 Cal. App. 4th 107, 110 (1995) (quoting
5   *Ceja v. J.R. Wood, Inc.*, 196 Cal.App.3d 1372, 1376 (1987)).

6   Here, Contreras has alleged facts sufficient to show, if true, that the machine that injured
7   him is a "power press." Contreras alleges that (1) the Hobart model 4346 is an electrical and
8   motorized machine (2) that makes sausage (3) by extruding ground pork through a round die at the
9   end of the machine; and (4) forms the pork into the shape of round sausage links to then be placed
10  into sausage casings for sale as chorizo. Compl. ¶ 3; *see* Mot. 5. Thus, Contreras has
11  demonstrated a possibility of succeeding on his claims against Mi Tierra.

12  Relying on unpublished California Court of Appeal decisions and the affidavit of Brian
13  Bader, ITW contends that the machine at issue is not a power press because a meat grinder does
14  not contain a die. Opp'n 4–5. As to the former, in his reply, Contreras asks the Court to not only
15  give no weight to the unpublished cases on which ITW relies, but also to award sanctions against
16  ITW for citing the unpublished cases. Reply ISO Mot. 3. The Court allowed ITW to file a sur
17  reply on the issue of whether the Court should impose sanctions. ECF 28; Sur Reply, ECF 29.
18  The Court declines to exercise its discretion in this manner because disregard of the improperly
19  cited materials is sufficient to cure the rule violation.

20  The Court also declines to consider Bader's affidavit that was submitted with Defendants'
21  notice of removal. *See* Bader Aff., ECF 1-2. In his affidavit, Bader, a Senior Engineer in the
22  Food Machine Engineering department who has been working for ITW since 1984, declares that
23  the Hobart model 4346 mixer-grinder does not qualify as a power press because it (1) does not
24  utilize a die to perform its function; (2) does not have any mechanism that presses together to cut a
25  shape that is a mirror image of the mechanism; and (3) does not form material into a fixed shape.
26  *Id.* ¶¶ 9–11. Plaintiff raises numerous evidentiary objections to Bader's affidavit and asks the
27  Court not to consider it. Reply ISO Mot. 6, ECF 22.

28  Defendants are correct that "[w]here fraudulent joinder is an issue . . . '[t]he defendant

5

seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'" *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); Opp'n 3. Accordingly, in determining whether there is fraudulent joinder, the court may consider summary judgment-type evidence such as affidavits and deposition testimony. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citation omitted). This includes declarations submitted by both defendant and plaintiff. *FreemanGrove v. Childtime Learning Ctrs., Inc.*, No. 16-0745, 2016 WL 3561773, at *4 (C.D. Cal. June 28, 2016) (citation omitted). Consideration of evidence is discretionary in a fraudulent joinder analysis, and "in some courts, piercing the pleadings is the exception rather than the norm." *Reynolds v. Boeing Co.*, No. 15-cv-2846, 2015 WL 4573009, at *4 (C.D. Cal. July 28, 2015).

In *Reynolds*, the court gave weight to an errata and declaration contradicting sworn deposition testimony to determine that a party was not a sham defendant in light of the "strong presumption against removal jurisdiction," and "an additional presumption against fraudulent joinder." *Id.* at *2–3. Nevertheless, the court cautioned against considering summary judgment like evidence when assessing fraudulent joinder:

> [T]he two analyses do not mix well, so the rules employed at summary judgment do not always fit the fraudulent joinder paradigm. In the words of the Eleventh Circuit, "the substantive standards are very different," and "district courts must exercise extraordinary care to avoid jumbling up motions to remand and motions for summary judgment that come before them."

*Id.* at *4 (citing and quoting *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997)). The *Reynolds* court explained that in considering a motion to remand, the Court "must limit itself to checking for obviously fraudulent or frivolous claims." *Id.* (citation and internal quotation marks omitted); *Berger v. Harley Ellis Devereaux*, No. CV 08-2318, 2008 WL 10610129, at *10 n.66 (C.D. Cal. June 6, 2008) ("While the court can consider summary judgment-type evidence in assessing the propriety of a fraudulent joinder claim, ultimately, the standard it must apply is closer to a Rule 12(b)(6) standard." (citations omitted)). Moreover, the presumptions against removal and finding fraudulent joinder "caution against dismissing a party as fraudulently joined based on ambiguity." *Reynolds*, 2015 WL 4573009, at *5 (citation omitted).

Here, the Court is facing a factual ambiguity created by ITW's submission of Bader's

6

1 affidavit. Therefore, and in light of the Court's reasoning in *Reynolds*, which this Court finds
2 persuasive, the Court declines to consider Bader's affidavit. *Morris*, 236 F.3d at 1068. The Court
3 acknowledges that despite Plaintiff's argument to the contrary, Bader's affidavit makes a bare
4 showing that he is qualified as an expert on the subject. *See* Reply ISO Mot. 6; Bader Aff. ¶¶ 1–3.
5 However, Plaintiff has not had an opportunity to depose Bader or question him on his assertions,
6 or even to examine the machine—ITW is in complete control of the facts. Reply ISO Mot. 6; *cf.*
7 *Reynolds*, 2015 WL 4573009, at *4 (declining to adopt a summary judgment rule while assessing
8 fraudulent joinder because a party usually moves for summary judgment after completing
9 discovery, among other reasons). Moreover, although the pictures submitted with Bader's
10 affidavit are offered to show that the machine does not contain a die, there is no assertion that this
11 is the only option for the machine. Accordingly, the Court SUSTAINS Plaintiff's objections to
12 Bader's affidavit.
13 While the Court acknowledges that discovery could ultimately resolve the question of
14 whether the Hobart model 4346 is a power press in Defendants' favor, the procedural posture here
15 requires Defendants to prove that there is absolutely no possibility that Contreras could establish a
16 cause of action against Mi Tierra in state court. *See Thompson v. 3M Co.*, No. 17-006, 2017 WL
17 838806, at *4 (C.D. Cal. Mar. 3, 2017). That it has not done, primarily because when the issue is
18 whether a machine uses a "die," whether the machine is a power press is an issue of fact properly
19 reserved for the jury. *Islas v. D & G Mfg. Co.*, 120 Cal. App. 4th 571, 579–80 (2004) (reversing
20 an order of dismissal because a reasonable fact finder could have inferred that the machine used a
21 die). Thus, it would be overreaching for this Court to make a determination as to what a
22 California court might do when faced with this issue. *See Thompson*, 2017 WL 838804, at *4
23 (citation omitted). Accordingly, the Court declines to determine, as a matter of law, that the
24 Hobart model 4346 is not a power press at this stage of the proceedings. *See Mohammed v.*
25 *Watson Pharmaceuticals, Inc.*, No. SA CV09-0079, 2009 WL 857517, at*6 (C.D. Cal. Mar. 26,
26 2009) ("A party is only deemed to have been joined 'fraudulently' if after all disputed questions of
27 fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the
28 plaintiff could not possibly recover against the party whose joinder is questioned." (citations and

7

1  internal quotation marks omitted)).

2  For the aforementioned reasons, the Court concludes that ITW has not met its difficult burden of establishing that Mi Tierra was fraudulently joined in this case.  Therefore, the Court GRANTS Plaintiff's motion to remand.  The Clerk shall remand this case to this case to Santa Clara County Superior Court.

**IT IS SO ORDERED.**

Dated: March 6, 2017

_____
BETH LABSON FREEMAN
United States District Judge